The opinion of the Court was read as drawn up by
PaRKEr C. J.
The covenant declared on is, that the defendants, who had hired the plaintiff’s farm by indenture of lease, should “ not carry off any hay or stover from said farm, under the forfeiture of ten dollars for each ton and the breach alleged is, that i£they did carry off from said premises a large quantity, to wit, ten tons of hay, contrary,” &c. By the statement of facts agreed on by the parties it appears, that during the continuance of the lease, certain creditors of the defendants attached a quantity of hay, which had been cut on the farm, and caused the same to be removed therefrom ; and that it was afterwards sold to satisfy the judgments recovered by those creditors ; and the question is, whether this is a removal within the terms of the covenant. It does not appear that the defendants procured or assented to these attachments; but on the contrary it is agreed that Putnam, one of the defendants, forbade the hay’s being carried off, stating that by the provisions of his lease it was to be expended on the farm. The words of the covenant, taken strictly, will reach only a voluntary removal of hay, &c., by the defendants; — “they shall not carry off,” &tc. If it had been provided in addition to this, that they should not “ suffer to be carried off,” perhaps an involuntary removal would have been a breach.[1] But the law in England seems to be very clear, that in analogous covenants, such as not to assign, set over, put away, &c., a transfer upon execution or a judgment not assented to for the purpose of authorizing the sale, is not a breach of such eondi- *222 tions. It was so settled in the case of Doe dem. Mitchinson v. Carter, 8 T. R. 57, notwithstanding the execution, on which the lease was sold, issued on a judgment rendered on a confession by warrant of attorney, which original act was voluntary on the part of the lessee. The same case having come up again before the court, as reported in the same volume, p. 300, judgment was rendered for the plaintiff, on the ground that the lessee had confessed judgment for the express purpose of enabling the creditor to take the lease in execution. This was treated as a fraud upon the lessor, and the title under the execution was vacated. In this latter case Lord Kenyon says, C£ If the lease had been taken by the creditor under an adverse judgment, the tenant not consenting, it would not have been a forfeiture.”[2]
The case in 2 East, 481, does not militate against the foregoing decision; for the estate was considered to have been leased on the condition that the lessee should continue to dwell thereon, and his actual removal, though immediately before a sale of the premises on an execution, was determined to be a forfeiture.
The English common law on this subject has been recog-nised and adopted in New York. The case of Jackson dem. Schuyler, 7 Johns. R. 531, is exactly similar to the case cited from 8 T. R. 57. The court say, that the covenant not to assign &c., only applies to voluntary sales by the lessee. And in the case of Jackson dem. Stevens et al. v. Silvernail, 15 Johns. R. 278, which was the case of a lease for life, with covenant not to sell, dispose of, or assign his estate in the premises, the lessee voluntarily executed a lease of part of the *223 premises for twenty years ; and this was held no breach. The court say, — •“ The plaintiff’s claim is stricti juris; and to entitle him to recover &c., he must bring his case within the penalty, on the most literal and rigid interpretation of the covenant.”[1]
Now we think there can be seen no difference in principle between these cases and the case at bar. It has been suggested, that in the cases decided in England and New York the covenants were construed with greater strictness, because a forfeiture of the estate was occasioned by a breach ; but we can hardly think a different rule of construction would be applied to cases of penalty, or stipulated damages, and cases of forfeiture. And indeed, in one of the cases above cited, it is argued by counsel, that the forfeiture ought not to be adjudged,' because if an action had been brought for a penalty in like circumstances, it could not be maintained. 8 T. R. 57.
The general principle to be deduced from the cases is, that covenants not to assign, transfer, &c., are broken only by a voluntary transfer by the lessee; that sales on execution, the judgment being in invitum, are no breach ; though if suffered for the purpose of evading the force of the covenants they shall be considered a breach. In the case before us there was no consent of the lessees, express or implied; we are brought therefore to consider, that the removal of the hay was involuntary and therefore no breach of the covenant.[2]

Plaintiff nonsuit.

 But see Hobson v. Middleton, 9 Dowl. & Ryl. 247; S. C. 6 Barn. & Cressw. 295; Hesse v. Albert, 3 Mann. & Ryl. 406.

 On the distinction, which governed the judgment in Doe v. Carter, 8 T. R. 57, it has been holden, that the bankruptcy of the lessee, and consequent vesting of his term in the assignees under the commission, are not a breach of a covenant restraining assignment, the word assigns being construed by the court to mean voluntary assigns. Doe v. Bevan, 3 Maule & Selw. 353; Doe v. Smith, 5 Taunt. R. 795; S. C. 1 Marshall, 359; Onslow v. Corrie, 2 Madd. R. 341; Goring v. Warner, 2 Eq. Cas. Abr. 100, pl. 3; S. C. 7 Vin. Abr. 85, pl. 9.
See also Doe v. Watt, 8 Barn. & Cressw. 308; S. C. 8 Dowl. & Ryl. 35; Shee v. Hale, 13 Ves. 404; Wilkinson v. Wilkinson, 3 Swanston, 515; Rex v. Topping, 1 M'Clel. & Young, 544.

 See Platt on Covenants, 406 et seq. (in Law Libr. No. 8, p. 181, et seq.)

 See Elliot v. Edwards, 3 Bos. & Pul. 181; Rex v. Topping, 1 M'Clel. & Young, 544.